CITED *in Cam. & Am. R. R. Co.* v. *Stewart,* 3 *C. E. Gr.* 494; *Cent. R. R. Co.* v. *Hetfield,* 5 *Dutch.* 215, 224; *Hetfield* v. *Cent. R. R. Co. Id.* 575.

---

JESSE W. STARR v. THE CAMDEN AND ATLANTIC RAILROAD COMPANY.

1. The act incorporating the Camden and Atlantic Railroad Company gives no power to lay the said road across a public highway, without first making compensation to the owner of the soil.

The constitution of New Jersey prohibits the legislature from granting such power.—*Haines, J.*

The declaration was for trespass *quare clausum fregit.*

Besides the general issue, two special pleas were put in. The first set forth that the place where the supposed trespasses were committed was a public highway, and that defendants entered upon and worked the same only so far as was necessary to construct their railroad where it necessarily crossed the highway, by virtue of the authority given to them in the act to incorporate the Camden and Atlantic Railroad Company. The second special plea set forth that the place in question was a public highway and turnpike, known as the Haddonfield and Camden turnpike and street. To these pleas a general demurrer was filed by the plaintiff, upon which issue was joined.

Argued before the CHIEF JUSTICE and Justices ELMER and HAINES.

*Dudley* and *W. L. Dayton*, for plaintiff, insisted :

1. That the defendants had no power to construct their road across a highway ; and if they had, it was only by first making compensation to the owner.

2. That the constitution of this state forbids the legislature to grant a power to take private property without first making compensation, and that this applies in a case where a highway is converted into or crossed by a railroad or a turnpike.

They cited : 3 *Cush. R.* 107 ; 4 *Bac. Abr. High. B.* 668 ; 1 *East* 69 ; 2 *Strange* 1004 ; 1 *Burr.* 143 ; 3 *Burns J.*, *28th Ed.* 77 ; 3 *Kent, 5th Ed.* 432 ; 6 *Mass. R.* 453 ; 2 *H. Black.* 527 ; 1 *Sumner* 21 ; 11 *East* 51 ; 19 *Wend.* 659 ; 1 *Burr.* 336 ; 16 *Mass.* 33 ; 4 *Wend.* 98 ; 15 *John.* 453 ; 7 *Scott's N. R.* 835 ; 2 *De Getz and Small*, 55 ; 9 *Bev.* 391 ; 4 *Ad. and El. N. S. or* 2 *B. R.* 46 ; 3 *Hill R.* 567 ; 25 *Wend.* 462.; 8 *Smedes and Mar.* 649 ; 8 *Pick.* 473 ; 21 *Verm.* 590 ; 19 *Wend.* 659 ; 6 *Pick.* 56 ; *Acts of* 1852, *p.* 448, 304, 328, 338, 349, *and various other turnpike acts in other years.*

*Carpenter* and *Browning*, for defendants, insisted :

1. That the company had, by necessary implication, a right

to cross all intervening highways and turnpikes, without making any compensation to the owner of the soil.

2. That a railroad is only an improved highway, and that altering a highway to a railroad is not taking the land within the constitutional provision.

They cited : 4 *Cush.* 71 ; *Saxton* 369 ; 21 *Verm.* 590 ; 6 *Whart.* 25 ; 23 *Pick.* 327 ; 16 *Pick.* 175 ; 3 *Amer. L. Jour.* 366, case of *Plant* v. *City of Brooklyn ;* 4. *Am. L. J.* 50, case of *Adams* v. *Saratoga and Wash. C. Co. ;* 7 *Barb. C. in C. R.* 508 ; 4 *Cush.* 162.

ELMER, J. The point mainly argued in this case was, whether our constitution forbids the legislature to authorize the land over which a public highway has been laid and opened, to be taken by a private corporation for a railroad, without just compensation first made to the owner of such land. In the state of New York it has been expressly so ruled. *Trustees* v. *Auburn and Rochester Railroad Co.,* 3 *Hill,* 567 ; while in Pennsylvania it would seem that a contrary doctrine is held. *Case of Trenton and Philadelphia Railroad Co.,* 6 *Whart.* 25. It is not necessary, however, to decide this point, unless the act incorporating the Camden and Atlantic Railroad Company does, by express grant or by necessary implication, undertake to give that power. Nothing is said in the act about highways ; but inasmuch as it authorizes a railroad to be constructed from a point on the Delaware, entirely across the state, to a point on the sea shore, between which numerous highways were known to intervene, which must necessarily be crossed at different points, it was insisted that power to cross them must be implied, as was held in the case of *Inhab. of Springfield* v. *Connecticut River Railroad,* 4 *Cush.* 71 So far as the public use of the highway is concerned, I have no doubt this is so. Whether any compensation is required to be made to the owners of the soil is a very different question, the solution of which depends upon the true construction of the different provisions of the act. In the Pennsylvania

case, express power was given to lay the rails along certain streets.

That a public highway is a mere easement, and that the owner of the soil over which it passes has, by the law of this state, as well as by the law of England and of most of the states of the Union, a right to an action of trespass against any person who interferes with it for any other purpose but to use or repair it as a highway, is too well established to require a reference to authorities. If a railroad can be authorized to be constructed along or across a highway, without compensation to such owner, it must be on the ground that a railroad is in fact only a more perfect highway, and that by taking or altering a common highway for such a purpose, no private property is necessarily taken from the owner, and upon this ground it was placed by the counsel of the company. If this be admitted to be correct, as to which no opinion is meant to be intimated, still it is certain that a railroad or a turnpike road, will affect the land in a manner different from an ordinary highway, and sometimes much more to the injury of the owner, so that undoubtedly the legislature may provide that compensation be made for such injury, if such a course is deemed just and expedient, and I think it cannot be assumed that this was not intended without a clear expression of the legislative will to the contrary. Many laws have been passed within a few years, authorizing public highways to be converted into turnpikes, which are so framed as to require compensation to be made to the owner of the soil.

The sixth section of the act under which the defendants seek to justify entering on the highway in question, which is the one authorizing the construction of the railroad, provides, "that the payment or tender of the payment of all damages for the occupancy of lands through which the said railroad or railroads may be laid out, be made before the said company, or any person under their direction or employ, shall enter upon or break ground in the premises, except for the purposes of surveying and laying out said road or roads, unless the consent of the owners of such

lands be first had and obtained." The owners of land occupied by a highway are within the terms of this proviso, and cannot be excluded from it without assuming an intention which nowhere appears. It is a well established principle that in grants by the public any ambiguity in the terms of the contract must operate against the adventurers and in favor of the public.

In the case of the *Clarence Railway Co.* v. *The Great North of England Railway Co.*, 42 *Bench R.* 46, where the fourth section of the act provided that nothing in that statute should authorize the company to enter upon, take or damage any lands without the consent of the owner and occupier, and the forty-third section provided that in every case in which the said railway should cross any other railway the communication between them should, if the company and the owners of such other railway did not agree about the same, be made in such manner as should be directed by two engineers acting as arbitrators ; the court held that the company could not cross another railway without consent of the owners, although it should be impossible, without so crossing, to carry the first mentioned railway to the point specified in the act. This seems to be a stronger case than the one before us. The forty-third section, although it prescribes an arbitration and says nothing about consent, was held not to be a modification of the fourth, which requires consent, but subject to the provisions of that being first complied with. The act now in question, in unqualified terms, requires all owners of land through which the railroad should be laid out to be first compensated, and there is nothing that in any way indicates a different course of proceeding where a highway is crossed.

The second plea avers that the place where the supposed trespass was committed, was a highway and turnpike belonging to a private corporation. The turnpike, however, like the highway, is only an easement, so that the same principles apply. I am, therefore, of opinion that the demurrer must be sustained, and judgment given for the plaintiff.

HAINES, J. The question raised by the demurrer is, whether a railroad company may lawfully construct their railroad along a public highway without making compensation to the owner of the soil over which the highway runs ?

The solution of the question depends upon the interest which the owner of land, over which a highway passes, has in the soil. For if his interest in the soil passed out of him at the laying out of the highway, either by authority of law, or by voluntary dedication, he certainly cannot maintain an action for a trespass upon it. He could not aver it to be his close. So if his interest were suspended during the time of the continuance of the highway, for he could not prove that he was ever in possession.

But if the interest in the soil remained in him, and was not suspended during the continuance of the highway, he may maintain an action for injury done to it.

A highway is a passage open to all the citizens of the state, to go and return, pass and re-pass, at their pleasure. It is an easement, which the public have in the land, and an easement is defined to be, "a liberty. privilege or advantage in land, without profit, existing distinct from the ownership of the soil." It includes only the right of passage, and the incidental right to fell trees, dig the soil, and to do all other acts necessary to keep it in repair.

"This easement (of a public highway) does not comprehend any interest in the soil, nor give the public the legal possession of it ; the right of freehold is not touched by establishing a highway, but continues in the owner of the land, in the same manner that it was before the highway was established, subject to the easement." *Swift, J., in Peck* v. *Smith,* 1 *Conn't R.* 103, 132.

This principle is so universally recognized, that it would seem to be a work of supererogation to cite authorities to sustain it ; yet the following may be referred to : 3 *Comeyns Dig.* (*A.* 2) ; *Devaston* v. *Payne,* 2 *Hen. Bl.* 527 ; 2 *Smith's Leading Cases,* 90 ; *Stevens* v. *Whisler,* 11 *East* 51 ; *Woolrych on Ways,* 5.

Hence the owner of the soil may lay water pipes, gas, or

other pipes below the surface; may excavate for a vault, or dig for mining purposes, and use .it in any other manner that does not interrupt the free passage over it. He retains the full possession of it, subject only to the easement. He may fell the trees upon it, cut the grass, or depasture it. He may have his action for digging the ground there. 1 *Roll.* 392, *l* 8. He may maintain trespass against one who builds upon it. *Peck* v. *Smith,* 1 *Conn. R.* 103. Or for the exclusive appropriation of it. *Cortelyou* ads. *Van Brunt,* 2 *John. R.* 357. And an action of ejectment will lie for it. *Goodlittle ex dem. Chester* v. *Alker,* 1 *Bur. R.* 133.

The plaintiff, then, being the owner of the soil, subject to the right of way to the public, has a right of action against the defendants for digging and excavating it, unless there is something in their charter to protect them.

The sixth section of the act of their incorporation, *Pamphlet Laws* 1852, *page* 265, authorizes the company to enter at all times, on land or waters, for the purpose of exploring, surveying, leveling, or laying out the route, doing no unnecessary damage to private or other property ; and after the route shall have been determined upon, and the survey of it filed in the office of the secretary of state, then to enter upon, take possession of, hold, have, use, occupy, and excavate any such lands, and to construct their road, subject to such compensation as is thereinafter provided ; and it is upon the expressed condition that payment, or tender of payment, of all damages for the occupancy of the lands through which the railroad may be laid out, be made before they enter upon or break ground, except for the purpose of surveying and laying out the road.

The constitution of the state forbids the taking of private property for public use, without compensation ; and the legislature, in conformity with that restriction, did, by the charter, require compensation to be made before breaking ground in the premises, and provided a mode of ascertaining the amount of compensation. If the parties did not choose to avail themselves of that mode, the common law action of trespass may be resorted to.

The premises in question being private property, could not, either by the constitution, or by the charter of the company, be taken without compensation.

And if, contrary to the provisions of the constitution and the law, the defendants entered for any other purpose than exploring and laying out their route, before making or tendering compensation, they were trespassers, and liable to the plaintiff's action.

The defendants are not discharged from liability by reason of any compensation theretofore made for the use of the plaintiff's land for the purpose of a highway, or even for a turnpike road.  The compensation then made, if any, was for its use in that particular mode, and not for its occupation in any other mode.  The compensation first made was for the easement of a common highway, and afterwards for that of an ordinary turnpike road, which is a very different thing from the easement of a railroad.  The injury to the property by the one mode of its use, may differ greatly from that of the other.

If this were otherwise, then the right of a common highway would include a right in the public or in a company to use it for a turnpike, or railway, or a canal, which cannot be, any more than a footway can include a horseway, or a horseway a carriageway, or a private road a public highway. *Woolrych on Ways*, 1, 5.

It is true the company are authorized to cross the public roads by implication, necessarily arising from the extent of their railroad.  And the ninth section of the charter explicitly recognizes that right, and makes it the duty of the company to construct and keep in repair good and sufficient bridges or passages over or under the railroad where any public or other road shall cross the same; and to alter and grade the said roads so that the passage of horses, carriages, and cattle, passing and re-passing, shall not be impeded thereby.

This provision, so far as it refers to public roads, is not for the protection of the owners of the soil over which a highway passes, but for the safety of the public; and when

the company fail to perform the duty thus prescribed, they become guilty of nuisance, and are answerable for the public offence. And when by their operations they injure an individual, they become responsible to him also for the injury he has sustained.

In the case of the *Presbyterian Church* v. *The Auburn R. R. Co.*, 3 *Hill R.* 567, it was held that a railroad company became trespassers by passing over a highway without the permission of the owner of the soil or paying him the damages assessed.

And the same principle was recognized in the case of the *Seneca Road* v. *The Auburn R. R. Co.*, 5 *Hill* 170. The demurrer is well taken, and the plaintiff is entitled to judgment upon it.

The CHIEF JUSTICE gave no opinion.